IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| BOARD OF TRUSTEES, NATIONAL STABILIZATION AGREEMENT OF THE SHEET METAL INDUSTRY TRUST FUND, *et al.*, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:09cv1304 (LMB/JFA) |
| v. | ) ) | |
| J & R INSTALLATIONS, INC., *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiffs' motion for default judgment pursuant to

Fed. R. Civ. P. 55(b)(2). (Docket no. 21). Plaintiffs are the Board of Trustees of the National

Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SASMI"), the Board of

Trustees of the Sheet Metal Workers' National Pension Fund ("NPF"), the Board of Trustees of

the International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), the

Board of Trustees of the Sheet Metal Workers' International Association Scholarship Fund

("SMWIASF"), the Sheet Metal Occupational Health Institute Trust ("SMOHIT") and the

National Energy Management Institute Committee ("NEMIC") and they seek a default judgment

against defendants J & R Installations, Inc. ("J & R") and Rachel Boles ("Boles") (collectively

"defendants"). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing

with the court his proposed findings of fact and recommendations, a copy of which will be

provided to all parties.

1

## Procedural Background

On November 18, 2009, the plaintiffs filed a complaint alleging that the defendants are obligated to pay them for certain overdue contributions, liquidated damages, interest and late charges. (Docket no. 1). Summonses were issued for the complaint on November 20, 2009. (Docket no. 3). Returns of service for the summonses were filed with the court on December 31, 2009 indicating that a "Jane Doe" was served on December 16, 2009. (Docket nos. 4, 5).

On January 21, 2010, the plaintiffs filed an amended complaint, again alleging that the defendants are obligated to pay them for certain overdue contributions, liquidated damages, interest and late charges. (Docket no. 7). The amended complaint corrected the name of the corporate defendant (originally named as "J&R Installations" and amended to "J & R Installations, Inc."); included an additional allegation that Boles, as the owner, officer, agent or managing agent of a dissolved corporation, is personally liable for the company's debts; and increased the amount sought from the defendants to include contributions, liquated damages, interest and late charges for the months of July 2009 through December 2009. Summonses for the amended complaint were issued on January 26, 2010. (Docket no. 9). The summonses and amended complaints were served in person on Boles on February 28, 2010. (Docket nos. 16, 17). In accordance with Fed. R. Civ. P. 12(a), a responsive pleading was due on March 22, 2010, twenty-one days after each defendant was served with a summons and complaint.

Defendants failed to file a responsive pleading in a timely manner and on March 24, 2010, the plaintiffs filed their request for entry of default. (Docket no. 19). The Clerk entered default against each defendant pursuant to Fed. R. Civ. P. 55(a) on March 25, 2010. (Docket no. 20). On March 29, 2010, the plaintiffs filed a motion for default judgment with a supporting memorandum and declarations from Harold Bradshaw, Walter Shaw and Jerome Flanagan and a

notice of hearing for April 16, 2010 at 10:00 a.m. (Docket nos. 21-23). The motion for default

judgment, supporting memorandum and notice of hearing were served on the defendants by mail

on March 29, 2010. (Docket nos. 21-23). On April 16, 2010 counsel for the plaintiffs appeared

at the hearing on the motion for default judgment and no one appeared on behalf of either

defendant.

## Factual Background

The following facts are established by the amended complaint (Docket no. 7), the motion

for default judgment and the declarations filed in support of the motion for default judgment

(Docket nos. 21, 22).

SASMI is the collective name of the trustees of the National Stabilization Agreement of

the Sheet Metal Industry Trust Fund, a trust established under 29 U.S.C. § 186(c)(5). (Compl. ¶

4).[1] The trustees are the "named fiduciary," plan "administrator" and "plan sponsor" within the

meaning of 29 U.S.C. §§ 1102(a), 1002(16), and each is an individual "fiduciary," within the

meaning of 29 U.S.C. § 1002(21), of a "multiemployer plan" and "employee welfare benefit

plan" within the meaning of 29 U.S.C. §§ 1002(37) and (1). (Compl. ¶ 4). The SASMI is

administered in Alexandria, Virginia. (Compl. ¶ 9).

NPF is the collective name of the trustees of the Sheet Metal Workers' National Pension

Fund, a trust established under 29 U.S.C. § 186(c)(5). (Compl. ¶ 5). The trustees are the

"named fiduciary," plan "administrator" and "plan sponsor" within the meaning of 29 U.S.C. §§

1102(a), 1002(16), and each is an individual "fiduciary," within the meaning of 29 U.S.C. §

1002(21), of a "multiemployer plan" and "employee pension benefit plan" within the meaning of

---

[1] Citations are to the amended complaint filed on January 21, 2010 (Docket no. 7).

29 U.S.C. §§ 1002(37) and (3). (Compl. ¶ 5). The NPF is administered in Alexandria, Virginia. (Compl. ¶ 9).

ITI is the collective name of the trustees of the International Training Institute for the Sheet Metal and Air Conditioning Industry, a trust established under 29 U.S.C. § 186(c)(5). (Compl. ¶ 6). The trustees are the "named fiduciary," plan "administrator" and "plan sponsor" within the meaning of 29 U.S.C. §§ 1102(a), 1002(16), and each is an individual "fiduciary," within the meaning of 29 U.S.C. § 1002(21), of a "multiemployer plan" and "employee welfare benefit plan" within the meaning of 29 U.S.C. §§ 1002(37) and (1). (Compl. ¶ 6). The ITI is administered in Alexandria, Virginia. (Compl. ¶ 9).

SMWIASF is the collective name of the trustees of the Sheet Metal Workers' International Association Scholarship Fund, a trust established under 29 U.S.C. § 186(c)(5). (Compl. ¶ 7). The trustees are the "named fiduciary," plan "administrator" and "plan sponsor" within the meaning of 29 U.S.C. §§ 1102(a), 1002(16), and each is an individual "fiduciary," within the meaning of 29 U.S.C. § 1002(21), of a "multiemployer plan" and "employee welfare benefit plan" within the meaning of 29 U.S.C. §§ 1002(37) and (1). (Compl. ¶ 7). The SMWIASF is administered in Alexandria, Virginia. (Compl. ¶ 9).

NEMIC is a labor management committee established pursuant to the Labor Management Cooperation Act of 1978 and 29 U.S.C. § 186(c)(9) that is funded by contributions under collective bargaining agreements. (Compl. ¶ 10).

SMOHIT is the collective name of the trustees of the Sheet Metal Occupational Health Institute Trust, a trust established under 29 U.S.C. § 186(c)(5) that is a joint labor-management health and safety organization serving the sheet metal industry. (Compl. ¶ 11).

4

J & R is a dissolved Illinois corporation and an employer in an industry affecting commerce as defined by 29 U.S.C. §§ 152(2), (6) and (7), and 1002(5), (11) and (12). (Compl. ¶ 15). J & R has a place of business in Lockport, Illinois. (Compl. ¶ 15). Boles is an individual residing in Lockport, Illinois and Boles is an owner, officer, agent or managing agent of J & R. (Compl. ¶ 16).

J & R employs employees represented for the purposes of collective bargaining by the Sheet Metal Workers' International Association and/or one or more of its affiliated local unions, which are labor organizations representing employees in an industry affecting interstate commerce (collectively, the "Union"). (Compl. ¶ 17). J & R entered into and agreed to be bound by the terms and conditions of a collective bargaining agreement with the Union (the "Labor Contract"). (Compl. ¶ 18). J & R also entered into and agreed to be bound by the terms of the agreements and declarations of trust of SASMI, NPF, ITI and SMWIASF (the "Trust Agreements") made between certain employers and employee representatives. (Compl. ¶ 19).

Under the Labor Contract and the Trust Agreements, J & R agreed to make full and timely contributions to the plaintiffs on behalf of employees who were covered by those agreements; to file monthly remittance reports detailing all employees or work for which contributions were required; to produce, upon request, all books and records deemed necessary to conduct an audit of J & R's records concerning its obligations to make payments to the plaintiffs; and to pay liquidated damages, late charges, interest, audit costs, and all costs of litigation expended by the plaintiffs to collect any amounts due as a consequence of J & R's failure to comply with its obligations detailed above. (Compl. ¶ 20). Plaintiffs allege that payments due to them are calculated separately for each of them on remittance reports that are required to be prepared monthly by each contributing employer. (Compl. ¶ 21). A complete

report and payment must be submitted by the twentieth day of each month following the month in which the work was performed, and are deemed delinquent if such payment and report are not received. (Compl. ¶ 22).

Under the Labor Contract, Trust Agreements, NPF Rules and Regulations, SASMI Rules and Regulations, other benefit plans and/or applicable law, J & R is required to pay the plaintiffs interest on any delinquent contributions at a rate of eight and one-half percent (8.5%) per annum; late charges equal to the greater of fifty dollars ($50.00) for each month of contributions paid after the due date, and before any lawsuit is filed, or ten percent (10%) of the contributions due for those months; liquidated damages equal to the greater of interest on all delinquent contributions or twenty percent (20%) of the contributions that were unpaid on the date the lawsuit was filed or which have become delinquent subsequent to such filing; and all attorney's fees and costs incurred by the plaintiffs as a result of J & R's failure to comply with its obligations. (Compl. ¶¶ 23, 24).

In Count I, for J & R's violation of 29 U.S.C. § 1145, SASMI, NPF, ITI and SMWIASF seek a judgment in the amount of $22,171.89 plus any amounts that become due and owing during the pendency of this litigation together with late charges, interest from the due date until the date of payment, liquidated damages, and reasonable attorney's fees and costs incurred in this action or the collection or enforcement of any judgment. (Compl. ¶¶ 28, 29).[2] In Count II, for J & R's breach of contract, the plaintiffs also seek a judgment in the amount of $22,171.89 plus any amounts which become due and owing during the pendency of the litigation together

---

[2] The amount claimed in paragraph 29 of the amended complaint appears to be incorrect. A review of the amounts actually claimed by the ERISA Funds (which do not include the amounts claimed by SMOHIT and NEMIC) is $21,701.71, not $22,171.89.

with liquidated damages, interest, and attorney's fees and costs incurred in this action or the collection or enforcement of any judgment. (Compl. ¶¶ 32, 33; Ex. 2). In Count III plaintiffs seek injunctive relief including an order enjoining the defendants from continuing to violate the terms of the collective bargaining agreements.

In the motion for default judgment, the SASMI, NPF, ITI and SMWIASF state that they are owed the amounts as detailed below under Count I for violation of 29 U.S.C. § 1145.[3] Other than the errors in calculations, the only difference in the amounts sought by the plaintiffs in the amended complaint and those sought in the motion for default judgment are attributable to an itemized request for attorney's fees and costs in the motion for default judgment.

| Plaintiff | Contributions | Interest through 1/22/2010 | Liquidated Damages | Costs and Attorney's Fees | Total |
|-----------|---------------|---------------------------|--------------------|--------------------------|-------|
| SASMI | $12,414.41 | $1,216.00 | $2,482.75 | $5,598.64 | $21,711.80 |
| NPF | $3,369.55 | $322.37 | $673.81 | $1,579.10 | $5,944.83 |
| ITI | $869.03 | $86.21 | $173.72 | 0 | $1,128.96 |
| SMWIASF | $72.34 | $7.17 | $14.35 | 0 | $93.86 |
| Total | $17,087.34 $16,725.33 | $1,667.68 $1,631.75 | $3,416.87 $3,344.63 | $7,177.74 | $28,879.45 |

---

[3] The charts included in the memorandum in support of the motion for default judgment (page 28 and exhibit 4) and the charts incorporated in the proposed order and judgment by default include numerous errors. The totals in the chart containing the Delinquency Calculation Summary -- ERISA 515 (Ex. 4b) for contributions, interest and liquated damages are incorrect. In the chart for Delinquency Calculation Summary – Contract (Ex. 4a) the total for legal fees and the grand total are incorrect. The correct amounts are shown in the charts included in this proposed findings of fact and recommendations.

In the motion for default judgment, the plaintiffs state that they are owed the amounts as detailed below under Count II for breach of contract.

| Plaintiff | Contributions | Interest through 1/22/2010 | Liquidated Damages | Costs and Attorney's Fees | Total |
|---|---|---|---|---|---|
| SASMI | $12,414.41 | $1,216.00 | $2,482.75 | $5,598.64 | $21,711.80 |
| NPF | $3,369.55 | $322.37 | $673.81 | $1,579.10 | $5,944.83 |
| ITI | $869.03 | $86.21 | $173.72 | 0 | $1,128.96 |
| SMWIASF | $72.34 | $7.17 | $14.35 | 0 | $93.86 |
| SMOHIT | $144.83 | $14.37 | $28.89 | 0 | $188.09 |
| NEMIC | $217.18 | $21.56 | $43.35 | 0 | $282.09 |
| Total | $17,087.34 | $1,667.68 | $3,416.87 | ~~$7,147.74~~ $7,177.74 | ~~$29,319.63~~ $29,349.63 |

In plaintiffs' memorandum in support of motion for default judgment they focus their request for injunctive relief on the defendants' failure to comply with the monthly reporting requirements. (Docket no. 22, pg. 14-15). However, the accompanying proposed order and judgment by default goes much further and seeks an audit within 20 days and the filing of past remittance reports and payments even though plaintiffs have sought a judgment for the past due contributions in this action.

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." The court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment.

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). As discussed below, it is important to distinguish that only the factual allegations in a complaint are deemed admitted; legal conclusions contained in a complaint are treated differently and are not deemed admitted. Rule 55(b)(2) provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

## Jurisdiction and Venue

The plaintiffs allege that this court has subject matter jurisdiction under Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. ERISA Section 502 provides that U.S. district courts have jurisdiction over civil actions brought under this title. This case is properly before the court under its federal question jurisdiction pursuant to 29 U.S.C. § 1132(e) since it is brought under ERISA for an alleged failure to make contributions in accordance with a collective bargaining agreement or multi-employer plan. The plaintiffs further allege that this court has subject matter jurisdiction under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). That section provides that U.S. district courts have jurisdiction over suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce. This case

is also properly before the court pursuant to 29 U.S.C. § 185(a) since it is brought under the LMRA for violation of a contract between an employer and a labor organization.

ERISA Section 502 states that an action under this title may be brought in the "district where the plan is administered" and "process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). The plaintiffs state that they are administered in Alexandria, Virginia. (Compl. ¶ 9). On February 12, 2010, the summons and complaint were served in person on Boles, an owner, officer or agent of J & R. (Docket no. 16, 17). Venue is proper in this court and this court has personal jurisdiction over J & R since the plaintiffs are administered within the Alexandria Division of the Eastern District of Virginia and J & R is an employer under ERISA Section 502. *See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. McD Metals, Inc.*, 964 F. Supp. 1040 (E.D. Va. 1997) (personal jurisdiction in an ERISA action should be determined on the basis of the defendant's national contacts with the United States pursuant to the Due Process Clause of the Fifth Amendment and ERISA itself provides for nationwide service of process).

For these reasons, the undersigned magistrate judge recommends a finding that this court has subject matter jurisdiction over this action, that the court has personal jurisdiction over the corporate defendant J & R and that venue is proper in this court.[4]

---

[4] Plaintiffs have provided no authority in the memorandum in support of the motion for default judgment for a finding of personal jurisdiction over the individual defendant Boles. For the reasons stated below, the undersigned is recommending that a judgment not be entered against Boles.

## Grounds for Entry of Default

The complaint was served in person on Boles, an owner, officer or agent of J & R, on February 28, 2010. (Docket nos. 16, 17). Under Fed. R. Civ. P. 12(a), a responsive pleading was due on March 22, 2010, the first business day that was twenty-one days after the complaint had been served on the defendants. After the defendants failed to file an answer or responsive pleading in a timely manner, the plaintiffs requested an entry of default on March 24, 2010. (Docket no. 19). The Clerk of the Court entered a default on March 25, 2010. (Docket no. 20).

The undersigned magistrate judge recommends a finding that the defendants were served properly, that they failed to file a responsive pleading in a timely manner and that the Clerk properly entered a default as to the defendants.[5]

## Liability and Measure of Damages

According to Rule 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because the defendants did not file a responsive pleading and are in default, they admit the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6).

### Count I

As set forth in the amended complaint, J & R failed to submit remittance reports and contributions to the SASMI, the NPF, the ITI and the SMWIASF for the period from October

---

[5] For the reasons discussed below, while it may have been proper to enter a default against defendant Boles, the plaintiffs have failed to comply fully with the Servicemembers Civil Relief Act, 50 U.S.C. § 521, and it is recommended that a default judgment not be entered against the individual defendant Boles.

2007 through December 2009. (Compl. ¶ 28). Specifically, 29 U.S.C. § 1132(g)(2) provides

that in any action brought to enforce the payment of delinquent contributions in which a

judgment in favor of the plan is awarded, the court shall award the plan:

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of–
>
>> (i) interest on the unpaid contributions, or
>>
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

In support of its claim for damages, the SASMI submitted a declaration from Harold

Bradshaw. (Docket no. 22, Ex. 1). Mr. Bradshaw is the Fund Administrator for the SASMI,

and is responsible for determining the amount of a contributing employer's delinquency and

coordinating all matters relating to its collection. (Bradshaw Decl. ¶ 1). The information

contained in the declaration of Mr. Bradshaw submitted on behalf of the SASMI establishes

that, under the ERISA claim in Count I, J & R owes at least $16,113.16 to the SASMI, which

includes $12,414.41 in unpaid contributions for the period October 2007 though December

2009; interest of $1,216.00 calculated pursuant to the SASMI Rules, Article II, Section 2 at a

rate of 8.5% per annum from the date the payment was due through January 22, 2010; and

liquidated damages of $2,482.75 on the contributions unpaid at the commencement of litigation calculated at a rate of 20% pursuant to the SASMI Rules, Article II, Section 1(B)(ii). (Docket no. 22; Bradshaw Decl. ¶ 6).

In support of their claim for damages under Count I, the NPF, the ITI and the SMWIASF submitted a declaration from Walter Shaw. (Docket no. 22, Ex. 5). Mr. Shaw is the Manager of Billing and Eligibility for the NPF, and is familiar with the payment histories of employers obligated to make contributions to the NPF, the ITI, the SMWIASF, the SMOHIT and the NEMIC. (Shaw Decl. ¶ 1). The information contained in the declaration of Mr. Shaw submitted on behalf of the NPF, the ITI and the SMWIASF establishes that J & R owes at least $4,365.73 to the NPF, which includes $3,369.55 in unpaid contributions for the period October 2007 though December 2009; interest of $322.37 calculated pursuant to Article V, Section 2(c) of the Pension Trust Documents and Section III(A) of the Policies and Procedures for Collection of Contributions, at a rate of 8.5% per annum from the date the payment was due through January 22, 2010; and liquidated damages of $673.81 on the contributions unpaid at the commencement of litigation calculated at a rate of 20% pursuant to Article V, Section 2(c) of the National Funds' Trust Document and Section III(B) of the Policies and Procedures for Collection of Contributions. (Shaw Decl. ¶ 7; Docket no. 22, Ex. 4(b)).

J & R also owes at least $1,128.96 to the ITI, which includes $869.03 in unpaid contributions for the period October 2007 though December 2009; interest of $86.21 calculated pursuant to Article V, Section 2(c) of the Pension Trust Documents and Section III(A) of the Policies and Procedures for Collection of Contributions, at a rate of 8.5% per annum from the date the payment was due through January 22, 2010; and liquidated damages of $173.72 on the

13

contributions unpaid at the commencement of litigation calculated at a rate of 20% pursuant to Article V, Section 2(c) of the National Funds' Trust Document and Section III(B) of the Policies and Procedures for Collection of Contributions. (Shaw Decl. ¶ 7; Docket no. 22, Ex. 4(b)).

J & R also owes at least $93.86 to the SMWIASF, which includes $72.34 in unpaid contributions for the period October 2007 though December 2009; interest of $7.17 calculated pursuant to Article V, Section 2(c) of the Pension Trust Documents and Section III(A) of the Policies and Procedures for Collection of Contributions, at a rate of 8.5% per annum from the date the payment was due through January 22, 2010; and liquidated damages of $14.35 on the contributions unpaid at the commencement of litigation calculated at a rate of 20% pursuant to Article V, Section 2(c) of the National Funds' Trust Document and Section III(B) of the Policies and Procedures for Collection of Contributions. (Shaw Decl. ¶ 7; Docket no. 22, Ex. 4(b)).

The SASMI and the NPF submitted a declaration from Jerome Flanagan detailing the attorney's fees and costs incurred in this action. (Docket no. 22, Ex. 8). The total amount of the attorney's fees and costs incurred was $7,177.74. The $5,721.00 in attorney's fees is comprised of 30.1 hours for four different attorney's time and 4.8 hours for two paralegals' time, and the amount of costs was $1,456.74, which is comprised of photocopy fees, two sets of service fees ($384.90 and $169.90), filing fees, special delivery, postage charges and computer research, including two Dun & Bradstreet reports on 9/29/09 and 2/25/10. (Flanagan Decl. ¶ 2; Docket no. 22, Ex. 9). The hourly rates charged for the attorney time was $180.00 and the hourly rate for the paralegals was $70.00. (Flanagan Decl. ¶ 3).

The undersigned magistrate judge has reviewed the declaration of Mr. Flanagan along with the information contained in Exhibit 9 and, given the circumstances involved in this action,

recommends that only a portion of the requested fees and costs be awarded.[6]  The plaintiffs filed

their complaint on November 18, 2009, after opening a file in August 2009, performing

"computer research regarding corporate status" and obtaining a Dun & Bradstreet report in

September 2009.  (Docket no. 22, Ex. 9).  After filing and serving the complaint, the plaintiffs

realized that they had not named a proper defendant and undertook preparing, filing and serving

an amended complaint.  (See Docket no. 13, Response to Order to Show Cause ¶ 4).  There is

no indication that the computer research and Dun & Bradstreet report obtained prior to the filing

of the initial complaint failed to reveal the accurate name of the corporate defendant.  Plaintiffs'

memorandum fails to address why the additional time and expense in filing an amended

complaint to correct an earlier error should be considered reasonable.  As recognized by the

plaintiffs in their memorandum, in making a fee award a court must determine the reasonable

number of hours expended on the litigation and multiple those hours by a reasonable hourly rate.

(Docket no. 22 at 23) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  After reviewing

the history of this litigation and the various filings by the plaintiffs, the undersigned

recommends a finding that the attorney's fees and costs incurred as a result of the need to

prepare, file and serve an amended complaint are not reasonable expenses under these

circumstances.  A review of the timekeeping records provided by the plaintiffs reveals that at

---

[6] The Flanagan declaration does not comply fully with the standards set forth in *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-23 (4th Cir. 2008), *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) and *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) for establishing a reasonable hourly rate.  While it includes exhibits indicating regional associate hourly billing rates and a survey of Ohio hourly billing rates from 2007, the relevant inquiry is whether the fees charged are comparable with the prevailing market rates of other local lawyers familiar both with the skills of the fee applicants and the type of work in the relevant community; here, Northern Virginia. *Plyler*, 902 F.2d at 278.  However, since the defendants have not contested the hour rate charged by plaintiffs' counsel, the court will accept those hourly rates.

least 5.6 hours of attorney time, 3.9 hours of paralegal time and $384.90 in service fees are directly related to the preparation, filing and service of the amended complaint, totaling $1,665.90. Accordingly, the undersigned recommends that the amount of attorney's fees and costs to be awarded in this case be reduced by that amount to a total of $5,511.84.

As to defendant Boles, plaintiffs' 27 page memorandum in support of the motion for default judgment fails to provide any authority to support a finding of liability against this individual defendant. In fact, neither the memorandum nor the accompanying declarations specifically address the claim against the individual defendant. The amended complaint does contain a factual allegation that Boles is an owner, officer, agent or managing agent of J & R that is deemed admitted given the defendants' default. (Comp. ¶ 16). However, the allegation that "[a]s an owner, officer, agent or managing agent of a dissolved corporation, Bowles in personally and jointly and severably liable for company's debts" is not a factual allegation but is a legal conclusion. In order to prevail on that theory, plaintiffs would need to provide some legal authority to support their claim against this defendant. Furthermore, it does not appear that the plaintiffs have complied fully with the Servicemembers Civil Relief Act, 50 U.S.C. § 521. The declaration filed by the plaintiffs in support of their request for entry of default merely states "[i]nasmuch as Company is a corporation, it is not in the military service, nor upon information and belief Individual Defendant." (Docket no. 19-1, ¶ 5). The Servicemembers Civil Relief Act requires an affidavit "showing necessary facts to support the affidavit." See, *U.S. v. Simmons*, 508 F. Supp. 552 (E.D. Tenn. 1980) (declining to enter a default judgment when an affidavit alludes to "best information and belief" and does not contain the slightest hint as to how that information and belief was acquired).

16

For these reasons the undersigned magistrate judge recommends that a default judgment be entered in favor of the National Stabilization Agreement of the Sheet Metal Industry Trust Fund; the Board of Trustees of the Sheet Metal Workers' National Pension Fund; the Board of Trustees of the International Training Institute for the Sheet Metal and Air Conditioning Industry; and the Board of Trustees of the Sheet Metal Workers' International Association Scholarship Fund against J & R Installations, Inc. on Count I of the complaint for violation of 29 U.S.C. § 1145 in the amounts shown below:

| Plaintiff | Contributions | Interest through 1/22/2010 | Liquidated Damages | Costs and Attorney's Fees | Total |
|-----------|---------------|----------------------------|--------------------|---------------------------|-------|
| SASMI | $12,414.41 | $1,216.00 | $2,482.75 | $4,299.23 | $20,412.39 |
| NPF | $3,369.55 | $322.37 | $673.81 | $1,212.61 | $5,578.34 |
| ITI | $869.03 | $86.21 | $173.72 | 0 | $1,128.96 |
| SMWIASF | $72.34 | $7.17 | $14.35 | 0 | $93.86 |
| Total | $16,725.33 | $1,631.75 | $3,344.63 | $5,511.84 | $27,213.55 |

**Count II**

In Count II plaintiffs allege that J & R has not paid them as required by the Labor Contract. (Compl. ¶ 32). They claim that J & R owes them at least $22,171.89 under the Labor Contract. (Compl. ¶ 33). Specifically, 29 U.S.C. § 185(a) provides that

> suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The differences between the amounts sought in Count I and this Count is the claim for damages by the NEMIC and SMOHIT. (*See* Docket no. 22, Ex. 4(a) and 4(b)).

As an initial matter, plaintiffs have standing to seek relief for breach of contract under the LMRA as third-party beneficiaries of the collective bargaining agreement. *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. DCI Signs & Awnings, Inc.*, 2008 WL 4329294 at *5 (E.D. Va. Sept. 15, 2008)(citing *Bakery and Confectionary Union and Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021-22 (4th Cir. 1997)). In support of its claim for damages under the Labor Contract, the SASMI again relies upon the declaration of Harold Bradshaw and a Delinquency Calculation Summary, as discussed in Count I. (Docket no. 22, Exs. 1, 4(a)). In Count II, the SASMI seeks the same recovery under the breach of the Labor Contract claim as it sought in Count I. (Bradshaw Decl. ¶ 6; Docket no. 22, Ex. 4(a)).

In support of their claim for damages under the Labor Contract, the NPF, the NEMIC, the SMOHIT, the ITI and the SMWIASF rely upon the declaration of Walter Shaw and a Delinquency Calculation Summary, as discussed in Count I, above. (Docket no. 22, Exs. 5, 4(a)). The NPF, the ITI and the SMWIASF seek the same total recovery in Count II as they sought in Count I. (Docket no. 8, Ex. 4(a) and (b); Shaw Decl. ¶ 7).

Under the breach of Labor Contract claim, J & R owes at least $282.09 to the NEMIC, which includes $217.18 in unpaid contributions for the period October 2007 though December 2009; interest of $21.56 calculated pursuant to Article V, Section 2(c) of the Pension Trust Documents and Section III(A) of the Policies and Procedures for Collection of Contributions, at a rate of 8.5% per annum from the date the payment was due through January 22, 2010; and liquidated damages of $43.35 on the contributions unpaid at the commencement of litigation calculated at a rate of 20% pursuant to Article V, Section 2(c) of the National Funds' Trust

Document and Section III(B) of the Policies and Procedures for Collection of Contributions. (Compl. Ex. 2; Docket no. 22, Ex. 4(a)).

Under the breach of Labor Contract claim, J & R owes at least $188.09 to SMOHIT, which includes $144.83 in unpaid contributions for the period October 2007 though December 2009; interest of $14.37 calculated pursuant to Article V, Section 2(c) of the Pension Trust Documents and Section III(A) of the Policies and Procedures for Collection of Contributions, at a rate of 8.5% per annum from the date the payment was due through January 22, 2010; and liquidated damages of $28.89 on the contributions unpaid at the commencement of litigation calculated at a rate of 20% pursuant to Article V, Section 2(c) of the National Funds' Trust Document and Section III(B) of the Policies and Procedures for Collection of Contributions. (Compl. Ex. 2; Docket no. 22, Ex. 4(a)).

As in Count I, the SASMI and the NPF collectively claim $7,177.74 in attorney's fees and costs under this count and they rely upon the declaration of Jerome Flanagan in support of their claims for, and the reasonableness of, the attorney's fees and costs in this count. (Docket no. 22, Ex. 8). As discussed above, the undersigned magistrate judge has reviewed the declaration of Mr. Flanagan along with the history of this action and recommends that an award of $5,511.84 in attorney's fees and costs is reasonable.

For these reasons the undersigned magistrate judge recommends that a default judgment be entered in favor of the National Stabilization Agreement of the Sheet Metal Industry Trust Fund; the Board of Trustees of the Sheet Metal Workers' National Pension Fund; the Board of Trustees of the International Training Institute for the Sheet Metal and Air Conditioning Industry; the Board of Trustees of the Sheet Metal Workers' International Association

19

Scholarship Fund; the Sheet Metal Occupational Health Institute Trust; and the National Energy Management Institute Committee against J & R Installations, Inc. on Count II of the complaint for breach of contract in the amounts shown below:[7]

| Plaintiff | Contributions | Interest through 1/22/2010 | Liquidated Damages | Costs and Attorney's Fees | Total |
|-----------|--------------|----------------------------|--------------------|---------------------------|-------|
| SASMI | $12,414.41 | $1,216.00 | $2,482.75 | $4,299.23 | $20,412.39 |
| NPF | $3,369.55 | $322.37 | $673.81 | $1,212.61 | $5,578.34 |
| ITI | $869.03 | $86.21 | $173.72 | 0 | $1,128.96 |
| SMWIASF | $72.34 | $7.17 | $14.35 | 0 | $93.86 |
| SMOHIT | $144.83 | $14.37 | $28.89 | 0 | $188.09 |
| NEMIC | $217.18 | $21.56 | $43.35 | 0 | $282.09 |
| Total | $17,087.34 | $1,667.68 | $3,416.87 | $5,511.84 | $27,683.73 |

**The amounts sought by the NPF, the SASMI, the ITI and the SMWIASF in Count II are the same as the amounts sought in Count I and those plaintiffs are entitled to only one recovery for the amounts sought. For that reason, the undersigned magistrate judge recommends a total judgment be entered against J & R Installations, Inc. in favor of the plaintiffs in the amount of $27,683.73 with interest from the date of judgment until paid.**

**<u>Count III</u>**

Plaintiffs' claim for injunctive relief is, at best, undefined and not supported properly. As an initial matter, the amended complaint requests that the defendants be enjoined from

---

[7] While the wisdom of complicating this action by including this second count for the purpose of recovering an additional $470.18 for the SMOHIT and the NEMIC may be questioned, those plaintiffs are entitled to pursue the relief sought in the amended complaint.

continuing to violate the terms of the collective bargaining agreement(s) providing for the timely filing of remittance reports with complete, accurate and proper information and timely payment of contributions to the Funds for so long as the defendants are contractually-required to do so. (Docket no. 7, Count III). To the extent the injunctive relief contained in the proposed order presented by the plaintiffs along with the motion for default judgment goes beyond the relief requested in the amended complaint (*i.e.* an audit), it should be denied since the plaintiffs are only entitled to the relief sought in the amended complaint. As to the filing of remittance reports for the months included in this action, there does not appear to be any need for those reports since the plaintiffs have sought – and recovered – the contributions due for those months through this action. As to future remittance reports and payments, the plaintiffs have failed to show that the defendant J & R is continuing to employ employees represented by the Union. The amended complaint indicates that J & R is a dissolved corporation and at the hearing on April 16, 2010, counsel for the plaintiffs was unaware of what, if any, business J & R was conducting at the present time. For these reasons the undersigned recommends that no relief be awarded to the plaintiffs pursuant to Count III.

## Notice

By means of the court's electronic filing system and by mailing a copy of this proposed findings of fact and recommendations to J & R Installations, Inc. and Rachel Boles at 1718 Mary Ann Lane, Apartment 11, Lockport, Illinois 60441 and 709 Gallant Drive, Minooka, Illinois 60447, the parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the

substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

ENTERED this 20th day of April, 2010.

/s/

John F. Anderson
United States Magistrate Judge

Alexandria, Virginia